**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

_____

KOSTOPOULOS RODRIGUEZ, PLLC,

      Plaintiff,

v.                                       Case No. 20-12191

GREEN DRYCLEAN L3, INC and
ARTHUR BUCKLAND,

      Defendants.

_____/

**OPINION AND ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFF'S MOTION TO
REMAND, DENYING DEFENDANTS' MOTION TO DISMISS AND DENYING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**I. INTRODUCTION**

Plaintiff Kostopoulos Rodriguez, PLLC ("Law Firm") is a business law firm which

filed the present action in Oakland County Circuit Court seeking a declaration that

claims filed in an arbitration proceeding initiated by Defendants Arthur Buckland and

Green DryClean, LLC are not arbitrable. It instead argues that Defendants must pursue

their claims in court. The dispute flows from three dry cleaning store franchise

agreements between Defendants and Plaintiff Law Firm's client, Non-Party Martinizing

International, LLC ("Martinizing"). Defendants sought to include Plaintiff Law Firm as a

respondent in an arbitration proceeding between Defendants and Martinizing.

Defendants alleged that Plaintiff Law Firm prepared due diligence disclosures for

Martinizing that contained knowingly inaccurate, false, and misleading language.

Plaintiff Law Firm brought the present action in state court, and Defendants removed

the proceeding to federal court.

Although formal discovery has not yet occurred in the case, the court is

presented with four different motions. Plaintiff Law Firm seeks to remand the case to

state court, or in the alternative, requests an award of summary judgment in its favor.

Defendants have filed both a motion to dismiss and a motion for summary judgment.

For the reasons stated below, the court denies all four pending motions.

## II. BACKGROUND

In March 2018, Defendants entered into three franchise agreements with

Martinizing to open Martinizing branded dry cleaning stores in Massachusetts. (ECF No.

1-1, PageID.10.) The three agreements all contain an identical binding arbitration clause

stating:

> Except to the extent… [otherwise provided by this agreement]*, all controversies, claims or disputes* between Franchisor and Franchisee (*and/or any affiliates* of Franchisee or Franchisor, and/or any of their respective shareholders, directors, partners, officers, employees, agents, *lawyers*, accountants, associates or guarantors, and/or any of their successors or assigns) arising out of or relating to (a) this Agreement or any other agreement between Franchisor and Franchisee, (b) the relationship between Franchisee and Franchisor, (c) the validity of this Agreement or any other agreement between Franchisor and Franchisee, or (d) statutory obligations owing by Franchisor or Franchisee, shall be submitted for arbitration to the American Arbitration Association or such other arbitration body designated by Franchisor on demand of either party pursuant to the rules of the of the designated arbitration body. (ECF No. 1-1, PageID.71.) (emphasis added)

The agreements provide that they should be interpreted according to Michigan law. (*Id.*

at 70.) And they contain an "Entire Agreement" clause providing that:

> This Agreement is made solely for the benefit of the parties hereto, their permissible successors and assigns. No other person shall have any rights by virtue of this Agreement. Franchisee shall have no rights or remedies against third parties solely by virtue of this Agreement. (*Id.* at 76.)

2

Only Defendants and Martinizing are signatories of the franchise agreements. (ECF No. 1-1, PageID.10) Plaintiff Law Firm alleges that it did not directly draft or negotiate these franchise agreements. (*Id.*) However, Plaintiff Law Firm allegedly provided Martinizing with other legal services involving its franchise agreements, including conducting a yearly review of the agreements and representing Martinizing in litigation. (ECF No. 8, PageID.835.) Plaintiff Law Firm also assisted Martinizing's preparation of a 2017 Franchise Disclosure Document that Defendants contend contains inaccurate, false, and misleading language. (ECF No. 8-1, PageID.856.) Defendants allege that these falsifications induced them to enter the franchising agreements with Martinizing and that Defendants repudiated the franchise agreements when they learned the truth. (*Id.*)

After Defendants backed out of the franchise agreements, Martinizing commenced arbitration under the agreement in December 2018. (ECF No. 8-2, PageID.991.) In this arbitration proceeding ("Buckland I"), Defendant and Martinizing began discovery which appears to still be ongoing. (*Id.* at 993.) During this discovery, Defendants claim they uncovered Plaintiff Law Firm's alleged role in preparing the Franchise Disclosures. (*Id.* at 994.) When Defendants sought to add Plaintiff Law Firm as a new party in Buckland I, however, the arbitrator denied the motion. (*Id.* at 96.) So, Defendants instead initiated a new, separate arbitration proceeding ("Buckland II") in July 2020 against Plaintiff Law Firm and several other respondents. (*See* ECF No. 4-3, PageID.404.)

The arbitration demand in Buckland II alleges that Plaintiff Law Firm was bound by the arbitration provision contained in the three franchise agreements and that

Defendants were induced to rely on the fraudulent 2017 Franchise Disclosures. (*Id.* at 473.)

On July 28, 2020, Plaintiff Law Firm filed the present action in Oakland County Circuit Court seeking a declaratory judgment. (ECF No. 1-1, PageID.8-12.) The complaint alleges that, as a non-signatory, Plaintiff Law Firm was not bound by the franchise agreements' mandatory arbitration provision and cannot be forced to arbitrate. (*Id.*)

A few days after filing the present declaratory judgment action, Plaintiff Law Firm also filed an answer with affirmative defenses in the Buckland II arbitration proceeding. (ECF No. 8-2, PageID.1389-92.) The answer notes that Plaintiff Law Firm continues to contest arbitrability but also included affirmative defenses based on specific provisions within the franchise agreements. (*Id.*)

### III. DISCUSSION

### A. Plaintiff's Claim Satisfies the Amount in Controversy Requirement for Diversity Jurisdiction

Plaintiff Law Firm first argues the present action should be remanded to Oakland County Circuit Court because it contends a declaratory judgment request under Michigan's arbitration statue, Mich. Comp. Laws Ann. § 691.1687, does not satisfy the amount in controversy requirement for diversity jurisdiction under 28 U.S.C. § 1332. (ECF No. 4, PageID.391-93). However, this view is at odds with precedent. Whenever there is complete diversity of citizenship among the parties, an action may be removed from state court if the amount in controversy exceeds $75,000. 28 U.S.C. § 1441; 28 U.S.C. § 1332. "[W]here a party seeks a declaratory judgment, the amount in controversy is not necessarily the money judgment sought or recovered, but rather the

value of the consequences which may result from the litigation." *Freeland v. Liberty Mut. Fire Ins. Co.*, 632 F.3d 250, 253 (6th Cir. 2011) (quotations omitted). The court is required to remand a case "if at any time before final judgment is entered it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c).

Plaintiff Law Firm reasons that the "object" of its litigation is not "a ruling on the merits" of the underlying claim but only a determination of arbitrability, and, the value of such litigation it argues is not "sufficiently measurable" to fulfill the amount in controversy requirement. (ECF No. 4, PageID.393.) But in an analogous case, where a franchisee opposed the removal of a state court declaratory judgment action weighing the enforceability of an arbitration provision, the court found it was "appropriate to look through that complaint to the value of the underlying arbitration" to determine the amount in controversy. *Hambell v. Alphagraphics Franchising Inc.*, 779 F. Supp. 910, 912 (E.D. Mich. 1991). Reasoning by analogy, the *Hambell* court found that the plaintiffs' state court declaratory judgment action (which sought to prevent enforcement of an arbitration agreement) was "most analogous to a motion to compel arbitration," a situation where other jurisdictions found it was appropriate to "look[] through to the amount of the possible award in the underlying arbitration" to determine the amount in controversy. *Id.* (citing *Davenport v. Procter & Gamble Mfg. Co.*, 241 F.2d 511 (2d Cir.1957); *In re Marcy Lee Mfg. Co.*, 354 F.2d 42 (2d Cir.1965); *State Farm Mutual Automobile Ins. Co. v. Schambelan*, 738 F.Supp. 926 (E.D.Pa.1990); *J.E. Sieben Construction Co., Inc. v. Davenport*, 494 F.Supp. 1035 (S.D.Iowa 1980)). The *Hambell* court's holding was later explicitly endorsed in *Webb v. Investacorp, Inc.* by the Fifth Circuit. 89 F.3d 252, 256 (5th Cir. 1996) (holding that when considering a suit seeking to

5

enjoin arbitration, it was proper to look at "the underlying arbitration to determine the amount in controversy in this action for declaratory relief"); s*ee also M.C. Const. Corp. v. Gray Co.,* 17 F. Supp. 2d 541, 545-46 (W.D. Va. 1998) (finding that the "value of the consequences that may result from litigation," in a declaratory judgment action, was the "several million dollars. . . at stake in [the underlying] arbitration").

Plaintiff Law Firm cites no authority disputing these precedents, so the court concludes that the proper way to value the declaratory judgment action is to look at the potential monetary value of the underlying arbitration proceeding Plaintiff Law Firm seeks to forestall. In Buckland I, the previous arbitration proceeding—between the franchisee Defendants and the franchisor Martinizing—it was undisputed that the initial franchising fee at issue was valued at $99,500. (*See* ECF No. 4-9, PageID.758.) Buckland II, Defendants' present arbitration action, is based on the same transaction and alleges that Plaintiff Law Firm played a role in "inducing" them "into a multi-unit franchise relationship with Martinizing" by allegedly preparing due diligence disclosures that contained knowingly inaccurate, false, and misleading language. (ECF No. 4-3, PageID.405.) Given the value of the franchising agreement, the alleged damages at issue in Buckland II easily exceed the $75,000 amount in controversy threshold for diversity jurisdiction under 28 U.S.C. § 1332. Since the requirement for diversity jurisdiction is satisfied, Plaintiff Law Firm's motion to remand is denied.

### B. Defendants' Motion to Dismiss

Defendants next argue that Plaintiff Law Firm's complaint should be dismissed because under the terms of the arbitration agreement, it should be up to the arbitrator, not a court, to determine the "arbitrability" of the present dispute. (ECF No. 7, PageID.816-18.) When a non-signatory opposes arbitration, however, Sixth Circuit

precedent is clear that the court, not the arbitrator, must first determine if an agreement to arbitrate even exists. *See Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 848-49 (6th Cir. 2020). Accordingly, as discussed below, Plaintiff Law Firm's complaint cannot be dismissed until this determination is made, and Defendants' motion to dismiss will be denied.

### 1. Motion to Dismiss Standard

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint for failure to state a claim upon which relief may be granted. Under the Rule, the court construes the complaint in the light most favorable to the plaintiff and accepts all well-pleaded factual allegations as true. *Barber v. Miller*, 809 F.3d 840, 843 (6th Cir. 2015).

Federal Rule of Civil Procedure 8 requires a plaintiff to present in the complaint "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint must provide sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

### 2. Defendants' Motion to Dismiss is Denied on the Arbitrability Question

The Federal Arbitration Act (FFA) is based on the principle that "arbitration is a matter of contract" and that contracts must be enforced "according to their terms." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010). "As a corollary, the Supreme Court has recognized that 'parties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.'" *Blanton*, 962 F.3d at 844 (quoting *Henry Schein, Inc. v. Archer & White Sales*, *Inc.*, 139 S. Ct. 524, 529 (2019)). Once parties have entered into an agreement to arbitrate the issue of "arbitrability," a court must allow the arbitrator to decide even this threshold question. *Id.* However, courts must begin with a "presum[ption] that the parties intended courts to decide disputes about 'arbitrability.'" *BG Grp., PLC v. Republic of Argentina*, 572 U.S. 25, 34 (2014).

Defendants argue that precedent requires this court, based on the language of the arbitration provision in the franchise agreements, to turn the question of arbitrability over to an arbitrator and therefore dismiss the present action. (ECF No. 14, PageID.1429-30.) In support, Defendants cite *Blanton* where the Sixth Circuit recently found the question of arbitrability between an employee of a Domino's franchise who opposed arbitration (despite signing a provision in his employment contract), and Domino's parent company, a non-signatory, should be determined by the arbitrator. (ECF No. 7, PageID.817-18 (citing *Blanton*, 962 F.3d, 844-46)). Defendants point out that the arbitration provision here also incorporates the same American Arbitration Association rules that were found dispositive on the issue of arbitrability in *Blanton*.

8

However, the key difference is that in *Blanton* the non-signatory did not oppose arbitration. *See Blanton*, 962 F.3d at 848.

Specifically, Defendants fail to highlight an important passage in the *Blanton* decision, which explicitly notes that a non-signatory who *opposes* arbitration has a right to first contest the existence of the arbitration agreement in court. 962 F.3d at 848-49.

> This court has treated the non-signatory question differently *when the non-signatory opposes arbitration*. Imagine, for instance, that [the employee] had never signed the arbitration agreement. In that context, our court has said, the question goes to the very "existence of [a valid arbitration] agreement" and thus the court *must itself* resolve the question even if the agreement incorporates the AAA Rules. *In re: Auto. Parts Antitrust Litig.*, 951 F.3d 377, 385 (6th Cir. 2020); see also  *DK Joint Venture 1 v. Weyand*, 649 F.3d 310, 317 (5th Cir. 2011) (same); *cf.* 7 Bruner & O'Connor on Construction Law § 21:93 (noting that "arbitrators and judges often draw distinctions between what might be called 'consenting non-signatories' (which seek to arbitrate) and 'non-consenting non-signatories' (which resist arbitration)" (cleaned up)). But [the employee here] doesn't challenge the "existence" of the arbitration agreement here. Probably because he signed it. *Id.* (emphasis added).

While it is true that even a non-signatory who opposes an arbitration provision can sometimes be bound by an arbitration provision under state contract law (and this very claim is addressed in Section C below), *Blanton* makes it clear that arbitrability is a threshold question for the court to decide. *Id. (citing Arthur Andersen LLP v. Carlisle,* 556 U.S. 624, 630-31 (2009)).

In an attempt to distinguish the present dispute, Defendants point out that Plaintiff is a law firm whose employees may have been aware of the contents of the arbitration agreement because of their legal work for Martinizing. (ECF No. 14, PageID.1431.) But such facts are irrelevant to this threshold issue, neither Plaintiff's legal expertise nor its knowledge of the contents of the franchise agreements, signed by Defendants and Martinizing, change the fact that precedent grants a non-signatory the right to challenge the enforceability of an arbitration clause in court through the

application of state contract law principles. Consequently, Defendants' motion to dismiss must be denied because Plaintiff Law Firm stated a claim for which, as a matter of law, the court can potentially provide relief.

### C. Cross-motions for Summary Judgment

Although formal discovery has not yet began in the present action, both parties have filed cross-motions for summary judgment on the sole question at issue: whether Plaintiff Law Firm is required to submit to binding arbitration for an adjudication of Defendants' claims against it, despite not signing the franchise agreements. While the court attempts to narrow the legal issues in dispute, the court concludes that, at this juncture, both cross-motions for summary judgment should be denied.

### 1. Summary Judgment Standard

Summary judgment is appropriate when there exists no dispute of material fact and the moving party demonstrates entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment, the court considers all evidence, and all reasonable inferences flowing therefrom, in the light most favorable to the nonmoving party. *Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015). The court may not make credibility determinations or weigh the evidence presented in support or opposition to a motion for summary judgment, only the finder of fact can make such determinations. *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014).

The movant has the initial burden of showing—pointing out—the absence of a genuine dispute as to any material fact; i.e., "an absence of evidence to support the nonmoving party's case." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 325 (1986). The burden then shifts to the nonmoving party to set forth enough admissible evidence

to raise a genuine issue of material fact for trial. *Laster*, 746 F.3d at 726 (citing *Celotex Corp.*, 477 U.S. at 324). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248; *Williams v. AT&T Mobility Servs. LLC*, 847 F.3d 384, 391 (6th Cir. 2017). Not all factual disputes are material. A fact is "material" for purposes of summary judgment when proof of that fact would establish or refute an essential element of the claim "and would affect the application of the governing law to the rights of the parties." *Rachells v. Cingular Wireless Employee Servs., LLC*, 732 F.3d 652, 660 (6th Cir. 2013).

### 2. Defendants' summary judgment motion

Both Plaintiff Law Firm and Defendants move for summary judgment on the enforceability of the arbitration agreement. Plaintiff's view is relatively straightforward, it argues that because Plaintiff Law Firm was not "a party to, nor did it sign, the Franchise agreements," it should not be bound by the arbitration provision which, by its nature, is a creature of contract. (ECF No. 4, PageID.395.) Plaintiff Law Firm also asserts that it did not draft, nor directly assist Martinizing in negotiating, the Franchise agreements at issue or receive any direct benefits from them. (*Id.*) Therefore, Plaintiff Law Firm reasons it was not a client or otherwise a third-party beneficiary of the valid agreement. (*Id.*; ECF No. 9, PageID.1396-97.)

Defendants respond that developments in the Michigan common law suggest that, in specific circumstances, non-signatories to an arbitration agreement can still be bound by its terms.[1] (*See* ECF No. 8, PageID.845-50.) They argue that Plaintiff Law

---

[1] Parties seem to agree given the franchise agreements explicit choice of Michigan law that it is binding authority on the interpretation of the arbitration provision.  (*See* ECF No. PageID.70.)

Firm is bound by the agreement to arbitrate under three alternative legal principles: agency, third-party beneficiary, and estoppel. (*Id.*) First, Defendants argue that the plain language of the arbitration clause—which provided it was applicable to all "claims or disputes between Franchisor and Franchisee (and/or any affiliates of the Franchisee or Franchisor, and/or any of their respective shareholders, directors, partners, officers, employees, agents, *lawyers. . .*) arising out of or relating to. . . this agreement,"— created a third party benefit for the Plaintiff Law Firm by allowing it to reduce the cost of dispute resolution through arbitration. (*Id.* at PageID.831-32, 846 (quoting ECF No. 1-1, PageID.71) (emphasis added).) Second, Defendants argue that under Michigan law, Plaintiff Law Firm, as a non-signatory, can still be bound by the agreement through estoppel because it knew the agreement's terms and embraced the agreement by relying on those terms to craft affirmative defenses, or even, by exercising its right to force arbitration in the past. (*Id.* at PageID.847–48; ECF No. 13, PageID.1423.) Third, Defendants offer the alternative argument that when Martinizing negotiated the arbitration provision it acted as Plaintiff Law Firm's agent by obtaining an arbitration provision that also covered outside lawyers. (ECF No. 8, PageID.850-51.) Therefore, it reasons that Plaintiff Law Firm should be bound by the actions of its "agent" Martinizing. (*Id.*) The court will now address each of these rationales in turn.

a. *Third-Party Beneficiary*

Defendants argue that Michigan law would make Plaintiff Law Firm a third-party beneficiary of the franchisee agreements' arbitration provision because the ability to have disputes arbitrated was an obvious benefit to Plaintiff on its own. The court disagrees that such a conclusion can be found in Michigan law. As the Supreme Court

has noted, the enforceability of arbitration agreements can extend beyond "disputes between parties to a written arbitration agreement. . . [i]f a written arbitration provision is made enforceable against (*or for the benefit of*) a third party *under state contract law*." *Arthur Andersen*, 556 U.S. at 631 (emphasis added). The *Arthur Anderson* decision makes clear that the court must look to the applicable state contract law to determine if a party qualifies as a third-party beneficiary. *See id.* "As is generally the case in matters of contract interpretation, '[t]he crux in third-party beneficiary analysis. . . is the intent of the parties.'" *Hogan v. SPAR* Grp., Inc., 914 F.3d 34, 39 (1st Cir. 2019) (quoting *Mowbray v. Moseley, Hallgarten, Estabrook & Weeden*, 795 F.2d 1111, 1117 (1st Cir. 1986) (citations omitted). "A third-party beneficiary must demonstrate with special clarity that the contracting parties intended to confer a benefit on him, considering that such status is an exception to the general rule that a contract does not grant enforceable rights to nonsignatories." *Id.*

"The third-party beneficiary doctrine, while similar in some ways to estoppel, is a distinct ground for compelling a nonsignatory to arbitrate." *Ouadani v. TF Final Mile LLC*, 876 F.3d 31, 39 (1st Cir. 2017) (citing *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 362 (5th Cir. 2003)). "[A] court analyzing whether the third-party beneficiary doctrine applies looks to the parties' intentions at the time the contract was executed, as opposed to equitable estoppel which "includes a focus on the parties' conduct after the execution of the contract." *Id.*

As a general rule, Michigan recognizes the right of third-party beneficiaries to enforce a contractual promise made in their favor. Mich. Comp. Laws § 600.1405; *Schmalfeldt v. N. Pointe Ins. Co.*, 469 Mich. 422, 428, 670 N.W.2d 651, 654 (2003).

13

"When determining whether the parties to the contract intended to make a third person a third-party beneficiary, a court should examine the contract using an objective standard." *Dynamic Const. Co. v. Barton Malow Co.*, 214 Mich. App. 425, 427, 543 N.W.2d 31, 33 (1995) (citations omitted). Acquiring "[t]hird -party beneficiary status requires an express promise to act to the benefit of the third party; where no such promise exists, that third party cannot maintain an action for breach of the contract." *Id.*

Michigan courts have also found that "nonsignatories of arbitration agreements can still be bound by an agreement pursuant to ordinary contract-related legal principles, including incorporation by reference, assumption, agency, veil-piercing/alter ego, and estoppel." *AFSCME Council 25 v. Wayne Cty.*, 292 Mich. App. 68, 81-82, 811 N.W.2d 4, 12 (2011). Though Defendants concede that no published Michigan decision has explicitly concluded that arbitration agreements are binding on third-party beneficiaries, it points to the reasoning in an unpublished decision, *Riley v. Ennis*, which signaled that third-party beneficiaries of an agreement could theoretically be bound by the contract's arbitration provision. *See Riley v. Ennis,* No. 290510, 2010 WL 673369, at *2 (Mich. Ct. App. Feb. 25, 2010) (noting that an agreement's terms were too vague to "make the defendant an intended third-party beneficiary of any contractual promise" so the dispute was not subject to the agreements arbitration provision).

Given these precedents, the court agrees that a clear third-party beneficiary of a contract would likely also be bound by its arbitration provision under Michigan law. However, this case is not that simple. To start, the franchise agreements at issue seem to expressly disavow the creation of third-party beneficiary rights. (*See* ECF No. 1-1, PageID.76 ("This Agreement is made solely for the benefit of the parties hereto, their

14

permissible successors and assigns. No other person shall have any rights by virtue of this Agreement.").) Attempting to circumvent this broad prohibition, Defendants argue that the arbitration provision itself was beneficial enough to Plaintiff Law Firm that the provision rendered the law firm a third-party beneficiary of the franchise agreement as a whole, because the clause explicitly mentions claims against franchisor's "lawyers" as falling under the arbitration provision. (*See* ECF No. 8, PageID.846 ("Having disputes arbitrated is an obvious benefit to [Plaintiff] KORO: the informality of arbitral proceedings is itself desirable, which in theory, reduces the cost and increases the speed of dispute resolution").) The court does not find such an argument persuasive.

Defendants point to no Michigan case law supporting the proposition that simply being named in an arbitration clause as a non-signatory is enough of a benefit to transform that named person into a third-party beneficiary of the agreement.[2] And it seems unlikely, given the cabined nature of Michigan's third-party beneficiary doctrine, that a Michigan court would provide such a broad extension. Furthermore, such a holding would likely transform the limited third-party beneficiary exception into a tool that could be used to force non-consenting, non-signatory third-parties into binding arbitration. How courts interpret agreements to arbitrate is "inexorably" linked to the idea

---

[2]Instead, Defendants' reply brief points to precedent applying Illinois state contract law. (*See* ECF No. 13, PageID.1424 (citing *S. Illinois Beverage, Inc. v. Hansen Beverage Co.*, No. 07-CV-391-DRH, 2007 WL 3046273, at *11 (S.D. Ill. Oct. 15, 2007)).) It may be true that Illinois courts have adopted a broader view of who constitutes a third-party beneficiary for arbitration purposes. *See Dannewitz v. Equicredit Corp. of Am.,* 775 N.E.2d 189, 192 (Ill. App. Ct. 2002) ("Where it is shown that the signatories to the agreement intended that the nonsignatories were to derive benefits from the agreement and where the arbitration clause itself is susceptible to this interpretation, then arbitration is proper.")(citations omitted). But Defendants fail to explain why Michigan would adopt the same interpretation.

"that arbitration is simply a matter of contract between the parties." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 938 (1995). The third-party exception should not be allowed to swallow this general rule by forcing a third-party, who derives no other benefit from the agreements, to arbitrate disputes under the contractual parties' chosen rules. Consequently, as an objective matter, the court cannot find as a matter of law that the agreements at issue transformed Plaintiff Law Firm into a third-party beneficiary subject to its arbitration provision.

### b. *Estoppel*

Next, Defendants argue that Plaintiff Law Firm is subject to the arbitration provision under the doctrine of equitable estoppel. While courts "have been willing to estop a signatory from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed, they have been hesitant to estop a nonsignatory seeking to avoid arbitration." *InterGen N.V. v. Grina*, 344 F.3d 134, 145-46 (1st Cir. 2003) (quotations omitted). Estoppel has been found appropriate for "non-signatories who, during the life of the contract, have embraced the contract despite their non-signatory status but then, during litigation, attempt to repudiate the arbitration clause in the contract." *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 200 (3d Cir.2001). Michigan courts also appear to have also adopted this view. *See AFSCME Council 25,* 292 Mich. App. at 81-82, 811 N.W.2d at 12 (citing *DuPont de Nemours & Co.*, 269 F.3d at 198).

Under their estoppel theory, Defendants argue that Plaintiff Law Firm has already embraced the franchise agreements by relying on its terms as the basis for affirmative

16

defenses filed in its answer to Defendants' complaint in the underlying Buckland II arbitration proceeding. (ECF No. 13, PageID.1423.)  Given this embrace, Defendants argues Plaintiff Law Firm should be bound by all the agreements' terms, including the arbitration provision. They conclude this embrace of the franchise agreement is sufficient grounds for summary judgment in their favor. (*Id.*)

The court is not persuaded that simply positing alternative affirmative defenses based on the franchise agreements demonstrates a sufficient "embrace" of the contract's terms to estop Plaintiff Law Firm from contesting arbitrability. *See AFSCME Council* 25, 292 Mich. App. at 82, 811 N.W.2d at 12. Plaintiff obverses that, under Michigan law, a party can still chose to contest a contract's arbitrability in court after filing initial responses in the underlying arbitration proceeding if he objects "before a hearing on the merits" in the arbitration proceeding. *SCA Servs., Inc. v. Gen. Mill Supply Co.*, 129 Mich. App. 224, 228, 341 N.W.2d 480, 482 (1983) ("SCA did not waive its right to contest General Mill's right to arbitration by participating in the arbitration proceedings."). And Defendants do not really contest that Plaintiff Law Firm was allowed to file an answer in the arbitration proceeding after objecting to the agreements' arbitrability in court. Therefore, the court sees the present scenario as analogous to a single adjudicative proceeding where a plaintiff brings these alternative arguments at once.

In civil litigation, a "party may state as many separate claims or defenses. . . regardless of consistency." Federal Rule Civil Procedure 8(d). So, at the pleading stage, it is generally improper to construe one theory as an admission against another alternative theory pled by a party. *See Wake Plumbing & Piping, Inc. v. McShane Mech.*

*Contracting, Inc.*, 2012 WL 6591664, at *3 (E.D. Mich. Dec. 18, 2012) ("At this stage, Plaintiff's claim for breach of contract in count one will not be construed as an admission against another alternative or inconsistent pleading in the same case. Although Plaintiff will not be able to recover damages on both its contract and promissory estoppel theories, Plaintiff may allege a promissory estoppel claim in the alternative to a breach of contract claim under Rule 8(d)."). Likewise, here the court sees no reason why Plaintiff Law Firm's mere pleading of alternative affirmative defenses, based in the franchisee agreements' contractual provisions, should be viewed as an "embrace" of the agreements' waiving its arbitrability defense. And Defendants have pointed to no case law specifically supporting such a contention. Consequently, the court declines to grant summary judgment for Defendants on the theory of equitable estoppel.

### c. *Agency*

Finally, Defendants argue that Plaintiff Law Firm should be bound by the franchise agreements' arbitration provision because its client, Martinizing, acted as Plaintiff Law Firm's agent when it negotiated an arbitration provision that gave Martinizing's "lawyers" the right to compel arbitration under the agreement. (ECF No. 8, PageID.849-50.) "An agency relationship may arise when there is a manifestation by the principal that the agent may act on his account." *Meretta v. Peach*, 195 Mich. App. 695, 697-98, 491 N.W.2d 278, 280 (1992) (citing Restatement (Second) of Agency § 15). "The test of whether an agency has been created is whether the principal has a right to control the actions of the agent." *Id.* (citing *Little v. Howard Johnson Co.*, 183 Mich. App. 675, 455 N.W.2d 390 (1990)). Defendants are correct that "nonsignatories may be bound to an arbitration agreement under ordinary contract and agency principles."

*Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 629 (6th Cir. 2003) (citing *Arnold v. Arnold Corp.*, 920 F.2d 1269, 1281 (6th Cir.1990); *see also AFSCME Council 25,* 292 Mich. App. at 81-82, 811 N.W.2d at 12 (2011) (enumerating "agency" as a Michigan contract law doctrine under which non-signatories can be bound to arbitrate).

When seeking summary judgment under such a theory of the case, Defendants bear the burden of establishing material facts exist—and that there is no genuine dispute as to those facts—before a judgment can be granted. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 325 (1986). It is impossible to conclude that the threadbare factual contentions laid out here by the Defendants in their brief provide sufficient support for a summary judgment ruling in their favor under an agency theory. Defendants offer two factual points in support of their theory. First, they allege that Plaintiff Law Firm was aware of the contents of the arbitration agreements because it had reviewed them in the past and knew about the arbitration clause. (ECF No. 8, PageID.849-50.) Second, "the arbitration provisions were drafted in a manner mutually beneficial to [Plaintiff] KORO and Martinizing, which both benefitted from disputes being arbitrated." (*Id.*)

These facts provide no direct support for the novel idea that Plaintiff Law Firm exercised control over Martinizing's conduct while negotiating the agreement. *See Meretta*, 195 Mich. App. At 697-98, 491 N.W.2d at 280. In fact, Defendants' acknowledgement that Martinizing itself benefited from an arbitration agreement covering its attorneys. This acknowledgment cuts against Defendants' theory of the case because it shows Martinizing was likely acting in its own best interest—not as an agent—when it negotiated the term.

19

In sum, the court finds that Defendants have failed to establish as a matter of law that Plaintiff is bound by the arbitration provision through a third-party beneficiary theory, estoppel, or agency so Defendants' motion for summary judgment is denied.

### 3. Plaintiff's summary judgment motion is premature given the lack of discovery

In the alternative, Defendants argue that the court deny should deny Plaintiff Law Firm's cross-motion for summary judgment because Defendants have not yet had the opportunity to conduct formal discovery. The court agrees that, at this juncture, Plaintiff Law Firm's motion for summary judgment is premature. Since Plaintiff Law Firm sought summary judgment almost immediately after removing the case to Federal court, there has been no opportunity for discovery. While it appears that substantial discovery has occurred in Buckland I, the arbitration proceeding between Defendants and Martinizing, such discovery was not focused on the separate issues at bar in the present case. (*See* ECF No. 8-2, PageID.992.)

Rule 56(b) allows either party to file for summary judgment "at any time," Federal Rule Civil Procedure 56(b), but "[t]he general rule is that summary judgment is improper if the non-movant is not afforded a sufficient opportunity for discovery." *Vance v. United States*, 90 F.3d 1145, 1148 (6th Cir. 1996) (citation omitted); *see Ball v. Union Carbide Corp.*, 385 F.3d 713, 719 (6th Cir.2004) ("It is well-established that the plaintiff must receive 'a full opportunity to conduct discovery' to be able to successfully defeat a motion for summary judgment"). The Sixth Circuit has previously noted that concerns about premature summary judgment are heightened when—like the instant case—the opposing party has been provided *no* opportunity for discovery. *See Moore v. Shelby Cty., Kentucky,* 718 F. App'x 315, 320 (6th Cir. 2017) ("Common sense dictates that

before a district court tests a party's evidence, the party should have the opportunity to develop and discover the evidence"); *see also White's Landing Fisheries, Inc. v. Buchholzer*, 29 F.3d 229, 231 (6th Cir. 1994) ("[W]e. . . conclude that summary judgment should not have been awarded until the plaintiffs were allowed some opportunity for discovery. . . . In the instant case, we find that the grant of summary judgment, absent any opportunity for discovery, is such a misuse.").

While a party opposing summary judgment generally must file an affidavit that complies with Rule 56(d), the Sixth Circuit has found the substance of the rule can be accomplished by "ma[king] the argument in [the] opposition brief". . . [which] 'can be enough to fulfill[] [the] obligation to inform the district court of [the] need for discovery.'" *Moore*, 718 F. App'x at 319 (quoting *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 627 (6th Cir. 2002)). Although Defendants' two affidavits do not seem to directly address the need for additional discovery, (*see* ECF No. 8-1; ECF No. 8-2), their briefs make clear that Defendants desire additional discovery, (*see* ECF No. 8, PageID.850). Specifically, Defendants seek to determine if the Plaintiff Law Firm had in the past embraced the franchise agreements or "previously availed itself of the benefit of the arbitration clause." (*Id.*) Given that no discovery has occurred in the present case, the court concludes it would be improper to grant Plaintiff Law Firm's summary judgment motion and instead finds the parties should proceed with limited discovery.

## IV. CONCLUSION

Precedent establishes that the court has jurisdiction over the present action because it is proper to look to the underlying arbitration proceeding when determining

the amount in controversy. And since Plaintiff Law Firm—who is opposing arbitration—is a non-signatory, the court, not an arbitrator, must decide a threshold question of arbitrability. *See Blanton*, 962 F.3d at 848. When making such an arbitrability determination, the court must look to applicable state contract law to determine if a non-signatory to the arbitration agreement can still be bound by the agreement. *See AFSCME Council 25*, 292 Mich. App. at 81-82, 811 N.W.2d at 12. While Defendants have failed to present evidence justifying summary judgment in their favor, Defendants are entitled to some limited discovery to support its theory that Plaintiff Law Firm's alleged past embrace of the franchise agreements binds it to the agreements' terms. Accordingly,

IT IS ORDERED that Plaintiff Law Firm's Motion for Remand or for Summary Judgment (ECF No. 4) is DENIED.

IT IS ORDERED that Defendants' Motion to Dismiss (ECF No. 7) is DENIED.

IT IS FURTHER ORDERED that Defendants' Cross-Motion for Summary Judgment (ECF No. 8) is DENIED.

s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  November 6, 2020

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, November 6, 2020, by electronic and/or ordinary mail.

s/Lisa Wagner
Case Manager and Deputy Clerk
(810) 292-6522

S:\Cleland\Cleland\AAB\Opinions and Orders\Civil\20-12191.KOSTOPULOS.summary.judgment.AAB.docx